# MERRIAM *v.* LAPSLEY.

*(Circuit Court, W. D. Missouri, W. D.    October, 1880.)*

1. CONTRACT FOR EXCHANGE OF LANDS.

Where plaintiff, one party to a contract, acts with full knowledge as to his own property, as well as the other property for which he is bargaining, while defendant, the other party, on account of non-residence, can scarcely be said to know his own property, and knows nothing whatever of the property he is trading for, the plaintiff is *held* to the strictest and fullest disclosures.

2. ACCEPTANCE BY LETTER—WITHDRAWAL—EQUITIES.

Where defendant signifies by letter addressed to the plaintiff his willingness to exchange property with plaintiff, and defendant, soon after mailing his letter, discovered his mistake as to the location of plaintiff's land, and wrote another letter withdrawing his proposition, but which letter did not reach plaintiff until after the latter had conditionally accepted the proposition also by letter, and who hastily and in a somewhat extraordinary manner took possession of the property of defendant, *held*, that the equity is with defendant, and judgment will be for restitution of possession of the premises, and an accounting in favor of defendant.

In Equity.   Bill for specific performance.

KREKEL, D. J.   This case comes here by change of venue from Cass county, Missouri; and in a controversy between Merriam, a resident of Plesant Hill, Cass county, Missouri, and Lapsley, a resident of the state of Kentucky, plaintiff, Merriam, claims that he agreed with defendant, Lapsley, to exchange certain improved real estate in Pleasant Hill, Cass county, Missouri, owned by defendant, for improved real estate in the state of Kansas, owned by Merriam.   The transaction commenced by Merriam writing to Lapsley, offering to exchange his Kansas lands for Lapsley's Pleasant Hill house and lot. A correspondence is thereupon had, and it is claimed by Merriam in his bill that an agreement was reached under which he took, and now holds, possession of the Pleasant Hill property.   All the information Lapsley ever had regarding the Kansas lands of Merriam came from Merriam through letters in evidence.   It seems that Lapsley, under an erroneous impression regarding the location of the land as to railroad improvements, expressed himself at one time willing to exchange, and so wrote Merriam, but soon after writing and mailing his letter discovered his mistake, and wrote withdrawing his proposition.   This letter of withdrawal did not reach Merriam until after he, as he claims, had accepted Lapsley's proposition, and so advised Lapsley by letter.   Had this letter of acceptance on part of Merriam been unconditional, the case, under all the evidence and the law as found in the adjudicated cases, would have been in favor of plaintiff.   But the letter of acceptance is not an unconditional one, but in it occurs the following language:

"I have some rails or posts, or both, which Mr. Sutton [the agent of Merriam] wrote me about selling, which I think were near the stable, which I reserve.   He also wrote me there were a good many peach trees that would be wanted this spring, and I told him to sell them, where they were too thick, for two cents apiece, and have them thinned out, but, of course, if any trees sold after this time, the sale will belong to you."

Thus it appears that Merriam, not only makes reservations not mentioned in any of his former correspondence spoken of, but seems not to have known even himself what had been done under his instructions regarding the sale of peach trees, a matter which Lapsley was entitled to know in order to determine for himself whether he would take the land after he had been advised of the condition of things. These may appear slight deviations or conditions, but are proper to be seized upon by the chancellor to prevent injustice. The whole case, under the evidence, presents one in which one party acts with full knowledge as to his own property as well as the other property for which he is bargaining, while the other, on account of non-residence, can scarcely be said to know his own property, and who knew nothing whatever of the property he was trading for. Under such circumstances Merriam is held to the strictest and fullest disclosures. While it cannot be said that plaintiff made direct misrepresentations, (for the value put upon his Kansas land, and the value thereof testified to by others, may be said to be within the range of allowance by one who estimates the value of his property in a trade,) yet the description of the land, and especially of the improvements, when examined under the testimony in the case, is well calculated to impress the mind more favorably than the facts testified to would do. The hasty and somewhat extraordinary manner in which plaintiff took possession of the property of defendant, without awaiting a reply to his conditional letter of acceptance, is well calculated to leave the impression that he largely relied on getting hold of the property in overcoming any obstacles to the consummation of the trade which might be imposed, thus anticipating, as it were, what has occurred. On the whole, I am well satisfied that the equity is with defendant, and the judgment of the court will be that plaintiff deliver up the possession of the premises to Lapsley on or before the first of June next; that an account of the rents, repairs, and payment of taxes be taken, so that judgment may be rendered in this regard for a specific and proper amount.